UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACQUELINE FORMAN,                          Case No. 1:06-cv-805

    Plaintiff,                              Barrett, J.
                                            Black, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS FOR A CLOSED PERIOD; AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was "not disabled" and therefore not entitled to a period of disability or disability insurance benefits ("DIB") supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") at 376-391) (ALJ's decision)).

**I.**

Plaintiff filed an application for DIB on May 16, 2001, with an onset date of May 18, 2000, alleging disability due to pain and weakness in her right arm, neck and back pain, right chest pain and muscle spasm, and pain in her right rib cage. (Tr. 102.) Her application was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) (Tr. 26-67, 68-73, 75-77.) On June 20, 2002, the ALJ

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

entered his decision denying plaintiff's claim.  (Tr. 9-22.)  The Appeals Council denied plaintiff's request for review.  Plaintiff timely appealed.  On March 24, 2004, the Court remanded plaintiff's case for further consideration of whether plaintiff was disabled beginning in September 2001.  (Tr. 392-414.)

On remand, an evidentiary hearing, at which plaintiff was represented by counsel was held on January 25, 2005.  (Tr. 592-635.)  A medical expert and vocational expert were also present and testified.

On March 23, 2005, the ALJ entered his decision denying plaintiff's claim.  That decision stands as defendant's final determination consequent to denial of review by the Appeals Council on November 2, 2006.  (Tr. 358-61.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.  The claimant met the disability insured-status requirements of the Act on May 18, 2000, the date the claimant stated she became unable to work, and she continues to meet them through December 31, 2005.

2.  The claimant has not performed substantial gainful activity since May 18, 2000, the alleged disability onset date.

3.  The medical evidence established "severe" impairments of vertebrogenic disorder of the lumbar spine with chronic back pain as a residual effect of corrective surgery and residual effects of corrective surgery for a right shoulder injury including intermittent right arm muscle spasm brought on by too much exertion.

4.  The claimant does not have an impairment or combination of impairments listed in, or medically equal to one list in Appendix 1, Subpart P, Regulation No. 4.

2

5.      The claimant's allegations of total disability are not supported by substantial medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of 20 CFR 404.1529.

6.      The claimant remains capable of performing the basic functional requirements of sedentary work as such work is defined for Social Security purposes.  She can lift as much as 10 pounds.  The claimant can stand and walk as much as two hours during any given eight-hour workday, but she should be permitted to alternate between sitting and standing at 30-minute intervals.  She should not be expected to climb stairs or ramps more than occasionally. She should not be expected to claim ladders, ropes or scaffolding.  The claimant should not be exposed to temperature extremes, wet or humid condition, hazardous instrumentalities or situations, or excessive vibration.  She should not be expected to use her right upper extremity above shoulder level.  She should not be expected to work on uneven surfaces. She should not be expected to push or to pull in the performance of job duties.  The claimant should not be required to maintain concentration on a single task for longer than 15 minutes at a time (20 CFR 404.1545.)

7.      The claimant is unable to perform her past relevant work as a licensed practical nurse.

8.      The claimant's residual functional capacity for the full range of sedentary work is reduced by the functional limitations associated with her impairments as described in Finding No. 6.

9.      The claimant is 40 years old and considered to be a "younger individual" (20 CFR 416.963.)

10.     The claimant has a high-school education (20 CFR § 416.964.)

11.      The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568.)

12.      Based on an exertional capacity for sedentary work, and the claimant's age, education and work experience, section 404.1569 of Regulations No. 4 and Vocational Rule 201.28 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.     Although the claimant's functional limitations do not permit her to perform

3

the full range of sedentary work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are charge account clerk and surveillance system monitor. There are as many as 5,000 such jobs in the region of Dayton, Ohio. The jobs exist in proportionate numbers in the national economy as well. Such jobs are representative of a significant number of jobs in the national economy that the claimant remains capable of performing despite her documented impairments.

(Tr. 389-391.)

In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB.

On appeal, plaintiff maintains that: (1) the ALJ erred in weighing the medical evidence; (2) the ALJ erred in failing to find a closed period of disability from September 2002 until 2004; (3) the ALJ erred in evaluating plaintiff pain, credibility, and subjective complaints; and (4) the ALJ committed various vocational errors. Upon careful consideration, the undersigned finds plaintiff's first two errors to be dispositive, and recommends that this matter be reversed and remanded for an award of benefits during the relevant closed period.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359,

362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that

finding must be affirmed, even if substantial evidence also exists in the record upon

which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion.
> The substantial evidence standard presupposes that there is a "zone of
> choice" within which the Commissioner may proceed without interference
> from the courts.  If the Commissioner's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a

sequential benefits analysis, which works as follows:  At Step 1, the ALJ asks if the

claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if

one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes

whether the claimant's impairments, singly or in combination, meet or equal a Listing in

the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can

still perform her past relevant work; and, finally, at Step 5 – the step at which the burden

of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant

can no longer perform her past relevant work, whether significant numbers of other jobs

exist in the national economy which the claimant can perform.  *See Gwizdala v.*

*Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16,

1999) (per curiam).  If the ALJ determines at Step 4 that the claimant can perform her

past relevant work, the ALJ need not complete the sequential analysis.  *See* 20 C.F.R.

§ 404.1520(a).  However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5.  *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

Plaintiff maintains that the ALJ erred in finding plaintiff not disabled during a closed period of disability from September 1, 2001 through June 15, 2004 as a result of low back decompression and fusion surgery.  Plaintiff further asserts that the ALJ erred in failing to give controlling weight to the opinion of Dr. Donnini, her treating physician and pain management specialist, that she would be disabled 12 to 24 months following her back surgery.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion.  *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976).  Mere diagnosis of a

6

condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

In discrediting the opinion of a treating source, the ALJ must consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, the specialization of the treating source, and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(i-ii), (d)(3-6) (2007); *Wilson*, 378 F.3d at 544.

Here, plaintiff was injured at work in March 2000 when she was assisting a nursing home resident (Tr. 245, 601). Dr. Donnini treated plaintiff for her injuries. (Tr. 215-67, 279-96, 449-94).

Plaintiff was then evaluated by Dr. Pledger in October 2001. (Tr. 301-03). He diagnosed spondylolisthesis with degenerative disc disease at L5-S1, left S1 radiculitis, spondylolysis at L5, and spondylolysis and spondylolisthesis Grade 1 (Tr. 303). Dr. Pledger recommended spinal decompression at L4-5 and L5-S1, posterior lateral fusion at L4-5 and L5-S1, pedicle screw fixation at L4-5 and L5-S1, harvesting a posterior iliac crest graft, and posterior lumbar interbody fusion at L5-S1 with a tangent graft (Tr. 303). In November 2001 and January 2002, Dr. Pledger repeated his diagnoses and recommendations. (Tr. 275-76, 299-300).

In February 2002, Dr. Pledger performed a spinal decompression from L5 to S1, posterolateral fusion at L5-S1, posterior lumber interbody fusion with tangent bone at L5-S1 and pedicle screw fixation at L5-S1, with harvesting of the left iliac crest graft (Tr.

307). About two weeks after surgery, Dr. Pledger saw plaintiff and recommended physical therapy twice a week for six weeks (Tr. 298).

In February 2002, Dr. Donnini reported that plaintiff had recently undergone surgical intervention. (Tr. 296). His working diagnoses were spondylolisthesis, postsurgical intervention, lumbar radiculopathy, degenerative disc disease of the lumbar spine, disc bulging, disc displacement of the lumbar spine, impingement syndrome, right shoulder tendonitis, right shoulder bursitis, impingement of the right shoulder, and right shoulder rotator cuff tear. (Tr. 296).

Dr. Donnini opined that plaintiff was disabled for the next twelve months based on her back condition and subsequent surgical intervention (Tr. 296). He added that, depending on the period of rehabilitation, it could be twelve to twenty-four months before plaintiff was fully capable of sustaining remunerative activity, if at all. (Tr. 296). Additionally, in May 2002, Dr. Pledger reported that plaintiff had a spondylolisthesis at L5-S1. (Tr. 351). He indicated that her surgery was three months old, and it was too early to tell if it was successful. (Tr. 351).

Dr. Donnini continued to treat plaintiff's post-op back condition until March 2004. Plaintiff's was seen monthly during that period, and Dr. Donnini's treatment notes from February 2002 through March 2004 reveal continued low back and leg pain, muscle weakness, numbness, and muscle spasms. (Tr. 449-494.)

In May 2004, Dr. Pledger recommended surgery to remove the spinal hardware which was retained in plaintiff's the low back. (Tr. 565.). The surgery was performed on

June 14, 2004. (Tr. 561.) Dr. Pledger noted that plaintiff's symptoms "have been decreasing since the surgery" but that she was still experiencing low back pain. Plaintiff also testified that her symptoms improved after the removal surgery. (Tr. 624.)

In his decision, the ALJ discounted Dr. Donnini's opinion that plaintiff would be totally disabled for 12 - 24 months following surgery because it was "speculative and was neither well-supported by medically acceptable clinical and laboratory findings nor consistent with the other substantial evidence in the case record." (Tr. 381.) The ALJ further noted that plaintiff's condition remained relatively stable with the use of pain medication.

However, although the ALJ found that Dr. Donnini's disabling finding was unsupported, as noted above, Dr. Donnini continued to treat plaintiff month for two years after the initial surgery, and his treatment notes consistently indicated plaintiff continued to suffer low back and leg pain, muscle weakness, numbness, and muscle spasms.

Moreover, the ALJ's finding that Dr. Donnini's opinion was inconsistent with other evidence is not supported by substantial evidence. The majority of the medical findings cited by the ALJ in support of his decision to give little weight to the findings of Dr. Donnini did not relate to plaintiff's low back impairment. Specifically, the ALJ noted that plaintiff's right knee x-rays, echocardiogram, and testing for deep venous thromosis were all negative. (Tr. 381.)

Additionally, the ALJ also relied on the findings of Dr. Hutson, the medical expert who testified at the hearing. Dr. Hutson, however, noted plaintiff's treatment with Dr.

Donnini from 2002 though 2004 and further noted that plaintiff's back condition "got a lot better once the [Dr. Pledger] got that metal out of there."  (Tr. 624.)  Thus, based on his review of the evidence of record, Dr. Hutson found that plaintiff could perform sedentary work.  (Tr. 625.)  Dr. Hutson's finding, however,  clearly considered plaintiff's improvements following her back surgery in June 2004.

Accordingly, Dr. Donnini's disabling finding is supported by his treatment notes, and it is not inconsistent with the medical evidence of record during the relevant time period.  Thus, as plaintiff's treating physician, Dr. Donnini's findings were entitled to controlling weight.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.")  And even if a treating physician's opinion is contradicted by substantial evidence, the opinion is not to be dismissed, and it is still entitled to deference.  *Roush v. Barnhart*, 326 F.Supp. 2d 858, 862 (S.D. Ohio 2004).

Here, the evidence shows that, during the relevant time period (September 1, 2001 through June 14, 2004), as a result of her low back fusion surgery, plaintiff suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. *See* 42 U.S.C. § 423(d)(1)(A). Accordingly, upon careful review, the undersigned finds that the ALJ's nondisability finding is not supported by substantial evidence.

### III.

When, as here, the nondisability determination is not supported by substantial

10

evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g)*; Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176; s*ee also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; s*ee also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

In view of the opinion of plaintiff's treating physician and plaintiff's assertions of disabling pain, there exists substantial evidence of plaintiff's disability from September 1, 2001 through June 14, 2004.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that plaintiff was not entitled to a period of disability and disability income benefits for a closed period from **September 1, 2001**

**through June 14, 2004**, be found **NOT SUPPORTED BY SUBSTANTIAL**

**EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an

immediate award of benefits during the relevant period; and, as no further matters remain

pending for the Court's review, this case be **CLOSED.**


Date: March 18, 2008                                      s/Timothy S. Black
                                                         Timothy S. Black
                                                         United States Magistrate Judge

12

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

JACQUELINE FORMAN,                                    Case No. 1:06-cv-805

      Plaintiff,                                              Barrett, J.
                                                        Black, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

### NOTICE

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).